**CV11-4291**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 07 2011 ★

BROOKLYN OFFICE

| | |
|---|---|
| Ohel Harav Yehoshua Boruch Foundation, Inc., and David Janklowicz, as trustee of the Mazel Ubracha 2008 Insurance Trust dated May 1, 2008 | Civil Action No.: |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| Lincoln Benefit Life Company, | **JURY TRIAL DEMANDED** |
| Defendant. | |

COGAN, J. SUMMONS ISSUED

Plaintiff Ohel Harav Yehoshua Boruch Foundation, Inc. (the "Foundation") and David Janklowicz, as trustee of the Mazel Ubracha 2008 Insurance Trust, by their attorneys, Susman Godfrey L.L.P., for their complaint against defendant Lincoln Benefit Life Company ("LBL") allege as follows:.

## NATURE OF THE ACTION

1. This is a case of an insurance company, LBL, improperly claiming that $2 million in insurance coverage "lapsed," despite the fact that LBL:

- did <u>not</u> provide the proper notice, as required by statute and agreed to by contract, that the policy would indeed lapse;

- <u>refused</u> for over three months to process a written, submitted change of address and ownership form, and thereby sent communications with regards to the insurance policy and its impending lapse to the wrong address;

- claimed that the policy lapsed on a <u>Sunday</u>, even though LBL would not accept wire payments on a Sunday; and

- <u>accepted</u> premium payments mailed the very next day after the alleged Sunday lapse, only to later return the premiums to try to "perfect the record" and make it appear as if the policy had lapsed.

## PARTIES

2. The Foundation is a non-profit organization under the laws of the State of New York, with its principal place of business in Brooklyn, New York.

3. David Janklowicz, as trustee of the Mazel Ubracha 2008 Insurance Trust, is a natural person residing in Brooklyn, New York. The Mazel Ubracha 2008 Insurance Trust (the "Trust") was established under the laws of the State of New York.

4. LBL is an insurance company organized and existing under the laws of the State of Nebraska, with its principal place of business located in Lincoln, Nebraska.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District.

7. Defendant is also subject to personal jurisdiction in this District because it has intentionally availed itself of the laws and markets within this District so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

## THE FACTS

A. **The Life Insurance Policy and it Ownership**

8. Agnes Friedman is a resident of Brooklyn, New York.

9. On May 1, 2008, Ms. Friedman, as grantor, established the Trust to own a life insurance policy that she would apply for to insure her own life.

10. On August 18, 2008, after receiving Ms. Friedman's application and undergoing its underwriting and due diligence, LBL approved Ms. Friedman's application and issued to her trust a $2 million life insurance policy insuring her life (the "Policy").

11. The Trust that Ms. Friedman created was the initial owner of the Policy. The number of the Policy issued by LBL to the Trust is #01N1388782.

12. The Trust has assigned its rights to the Policy and all of its claims and causes of actions in connection to and under the Policy, and transferred ownership of and beneficial rights to the Policy, to the Foundation.

13. The Policy states that "You may assign this certificate or an interest in it to another . . . No assignment is binding on [LBL] until we accept it." Through LBL's actions as alleged below, however, a genuine dispute has arisen as to whether LBL has in fact accepted the assignment and whether the assignment is void. Therefore, this action has been brought by both the Foundation and, in the alternative and if LBL maintains in this action that the assignment and transfer of interests alleged in the preceding paragraph is void, ineffective, or unlawful, by the Trust.

**B.  LBL Improperly Forces a Lapse by Wrongly Refusing to Process a Simple Change of Address and Trustee Request and by Not Sending a Proper Lapse Notice**

14. In order to inform LBL that the Foundation now owned the Policy, on December 7, 2010, the Trust provided LBL written notice of two important, preliminary facts. First, LBL was informed that the original trustee of the Trust had changed his address from the New Jersey address on file at the time of the application, to a new address in Brooklyn, New York.

15. Second, LBL was also told in writing that there had been a change in the trustee of the Trust. Specifically, the Trust informed LBL that the original trustee had resigned in June 2008 and that a successor trustee (David Janklowicz) had been immediately appointed, having an address in Brooklyn, New York.

16. LBL, however, simply ignored the specific change of address submissions. On December 17, 2010, LBL sent a letter to the original trustee's old (and invalid) address in New Jersey. In that letter, LBL acknowledged that it had received the request to change the trustee information, but stated that in order to finalize the change, LBL needed verification of the tax identification number of the Trust, and provided a "TIN Certification Request Form" for the Trust to complete.

17. Because LBL sent the December 17, 2010 letter to an incorrect address in New Jersey, the Trust was not able to respond. Instead, nearly one month later, the Trust followed-up with LBL to inquire into the status of the change of address submissions. LBL responded that a TIN Certification Request Form had to be filled out, and on January 14, 2011, LBL in fact received via email the completed and signed TIN Certification Request Form and LBL was asked to "put a rush on the change of trustee." LBL representative Katrina Sherbeck, however, responded that the form "can not be e-mailed" and required that the form be faxed or mailed. Following LBL's instructions, the form was indeed faxed that same day.

18. Rather than immediately processing the documentation, however, LBL continued to stall in the hopes of "running out the clock" and forcing a lapse of coverage. For the next two months, LBL did nothing but delay, obfuscate and hinder efforts to keep the policy in force.

19. Between January 14 and March 21, 2011, representatives of the Trust and the Foundation continued to contact LBL to find out about the status of the change of address and ownership request. During at least one of those calls, Ms. Sherbeck was the customer

representative and she admitted that all of the forms necessary for LBL to process a change of address and ownership had in fact been properly provided to LBL.

20. On Monday, March 21, 2011, representatives of the Trust and Foundation called LBL once again to find out the status of the change of address and trustee request. An LBL representative named "Rhonda" at extension 86572 answered the call. Rhonda had no explanation for LBL's failure to process the request, but she disclosed a critical, new fact: that the lapse date of the Policy had just occurred the day beforehand, on Sunday, March 20, 2011 (the "Sunday Lapse").

### C. The (Purported) "Sunday Lapse"

21. The Policy expressly provides that LBL "will send a written notice to the most recent address we have for you at least 30 days prior to the date coverage lapses."

22. LBL, however, violated these contractual terms and the law and did not timely provide written notice to the most recent address that LBL had for the Trust that stated that coverage would in fact lapse by Sunday, March 20, 2011. LBL breached this contractual provision in the hopes of manufacturing a lapse, and thereby keep the premiums paid to date without the obligation of having to pay the death benefit.

23. In response to LBL's disclosure of the Sunday Lapse, representatives of the Trust and Foundation explained that LBL's refusal to process the change of address and ownership information and failure to send the contractually required lapse notice to the proper address were improper and resulted in this alleged, manufactured "Sunday Lapse."

24. To try to put an end to LBL's administrative games and delays, LBL was requested again to change the address for communications to the owner of the Policy, and this time, the address would be the offices of counsel for the Foundation in Cedarhurst, New York.

LBL agreed to make that change. The next day, LBL sent a letter to the new address in Cedarhurst, New York confirming that address change.

25. Because the lapse date supposedly fell on a Sunday, on the very next day, Monday, March 21, 2011, representatives of the Foundation spoke with a customer representative at LBL and specifically offered in that conversation to wire LBL money that would be sufficient to cover the amount of premiums owed. LBL, however, refused to accept payment by wire. Accordingly, counsel for the Foundation sent the payment that same day via Federal Express overnight mail.

26. LBL accepted that premium payment mailed on March 21, 2011.

27. A few days later, LBL returned the premium payment and deemed coverage under the policy lapsed.

28. LBL's failure to timely process a simple change of ownership and address form between December 2010 and March 2011 is not the first time that LBL engaged in improper conduct to try to generate a lapse of coverage.

29. On December 16, 2010, the Foundation sent LBL a check for $19,944 to pay premiums owed on the Policy (the "December Payment"). The Foundation's check stated in the memo line that the payment was made for and to be applied to the policy insuring the life of Agnes Friedman.

30. However, one week later, LBL returned the December Payment to the Foundation's accountant (rather than to the Foundation directly) and claimed that LBL did not have the information needed to properly credit the payment. This claim was baseless: Ms. Friedman's name was clearly identified in the memo line of the check. LBL then threatened to lapse the Policy claiming that the lapse date was December 20, 2010.

31. LBL's attempt to manufacture a lapse was heavily opposed. Representatives of the Trust and Foundation had numerous conversations and emails with LBL, including with Ms. Scherbeck, explaining LBL's lapse error. LBL received a replacement check, for the exact same amount that had already been sent to (but rejected by) LBL a few weeks prior. On January 7, 2011, LBL informed the Trust in a letter – sent, once again, to the old, superseded address in New Jersey – that the Policy had been "reinstated" because payment had been received. This letter, of course, was inaccurate because the Policy had never lapsed (and thus there was nothing to "reinstate"), but it reflects a pattern and practice of, and desire by, LBL to do anything it can to try to manufacture a lapse.

32. LBL's unsuccessful efforts to lapse the Policy in December 2010 culminated in the improper Sunday Lapse in March 2011, which, in turn, has led to this lawsuit.

## FIRST CAUSE OF ACTION

### Declaratory Judgment

33. The Trust and Foundation incorporate, as if set forth herein, the allegations in the preceding paragraphs.

34. The Foundation is entitled to a declaration that the Trust's assignment of the Trust's rights to the Policy and all of the Trust's claims and causes of actions in connection to and under the Policy, and transfer of ownership of and beneficial rights to the Policy, to the Foundation is lawful, not void, and effective.

35. The Foundation, or, in the alternative, the Trust, is entitled to a declaration that coverage provided by the Policy is in effect and did not lapse in March 2011 for non-payment of premiums and other relief that is determined to be just and proper, including placing the Policy back in force and permitting the Foundation or the Trust to make additional premium payments,

if any, that would otherwise have been due and made had LBL not improperly deemed coverage to have lapsed.

## SECOND CAUSE OF ACTION

### Breach of Written Contract

36. The Foundation and the Trust incorporate, as if set forth herein, the allegations in the preceding paragraphs.

37. As set forth above, LBL entered into a contract which imposed a number of obligations on LBL with respect to providing a written notice at least 30 days prior to the date coverage lapses to the "most recent address" about which LBL was aware.

38. LBL has breached the terms of the contract by, among other things, failing to send a written notice to the most recent address that LBL had for the Trust at least 30 days prior to the date that coverage lapsed.

39. As a direct and proximate result of LBL's breach of contract, the Foundation, or, in the alternative, the Trust, has been damaged in an amount to be ascertained at trial.

## THIRD CAUSE OF ACTION

### Estoppel

40. The Foundation and the Trust incorporate, as if set forth herein, the allegations in the preceding paragraphs.

41. LBL is hereby estopped from deeming the Policy lapsed due to its acts and omissions as described above, including the acts and omissions of its agents Sherbeck and "Rhonda," the undue and unreasonable amount of time that LBL took to process a simple trustee and address change form, by repeatedly sending communication about the Policy to the wrong address, and by accepting a premium payment after the alleged lapse date.

42. The Foundation and the Trust have been prejudiced as a result of LBL's conduct,

including that both have expended time, legal fees and costs in pursuing this rightful claim for coverage.

43. Accordingly, the Foundation, or, in the alternative, the Trust, is entitled to a declaration that LBL is estopped from claiming that the Policy lapsed for non-payment of premiums in March 2011 and other relief that is determined to be just and proper.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

44. The Foundation and the Trust incorporate, as if set forth herein, the allegations in the preceding paragraphs.

45. Before LBL deemed the Policy lapsed, LBL was enriched by receiving more than $75,000 in premium payments; the enrichment was at the expense of the Trust and the Foundation; and the circumstances were such that equity and good conscience require that LBL make restitution.

## PRAYER FOR RELIEF

WHEREFORE, the Foundation and the Trust request that:

1. The Court grant the Foundation and/or the Trust damages on each of the breaches by LBL of its contractual obligations plus interest;

2. The Court declare that assignment by the Trust to the Foundation is lawful, not void, and effective, that the Policy is in full force and effect and the Policy must be restored or, in the alternative, that the Court award restitution and other equitable relief to the Foundation and/or the Trust for all premium payments made and retained to LBL plus interest; and

3. The Court grants the Foundation and/or the Trust such other and further relief as the court deems equitable and proper, including costs of suit.

Dated: September 7, 2011

Respectfully submitted,

*[signature]*

Seth Ard (SA9305)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York  10022
Telephone:	212-336-8330
Facsimile:	212-336-8340

Steven Sklaver (*pro hac vice* application to be filed)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067
Telephone:	310-789-3100
Facsimile:	310-789-3150

*Attorneys for Plaintiffs Ohel Harav Yehoshua Boruch Foundation, Inc. and David Janklowicz, as trustee of the Mazel Ubracha 2008 Insurance Trust*